McCord & Weaver, P.C., John F. Weaver, Knoxville, Tenn., for trustee.

Claiborne, Davis, Buuck & Hurley, David L. Buuck, D. Scott Hurley, Knoxville, Tenn., for debtor.

**In re L.H. STANSBERRY, Sr. a/k/a Herman Stansberry, Debtor.**

**No. 3–88–00546.**

United States Bankruptcy Court, E.D. Tennessee.

Jan. 20, 1989.

MEMORANDUM ON TRUSTEE'S OBJECTION TO DEBTOR'S AMENDED CLAIM OF EXEMPTION

RICHARD S. STAIR, Jr., Bankruptcy Judge.

The court has before it the objection filed by John F. Weaver, Trustee, to the debtor's claim of an exemption in the benefits and assets of an ERISA [1] qualified pension plan known as the "Boilermaker–Blacksmith National Pension Trust" (the Plan). At issue is whether the debtor's interest in the Plan, including a $1,059.70 monthly pension benefit, is excluded from his estate pursuant to 11 U.S.C.A. § 541(c)(2) (West Supp. 1988).[2] The trustee seeks a determination

1. Employee Retirement Income Security Act of 1974, 29 U.S.C.A. §§ 1001, *et seq.* (West 1985 & Supp.1988) and scattered sections of the Internal Revenue Code.

2. The debtor's gross monthly benefit payment, from which federal taxes in the amount of $84.79 are deducted, totals $1,144.49.

that the debtor's interest in the Plan is an asset of the estate and that the debtor is not entitled to exempt that interest nor is he entitled to exempt the monthly benefit payments derived therefrom. Alternatively, the trustee argues that if the debtor is entitled to exempt the monthly benefit payments, his exemption is limited by Tennessee's general garnishment law, Tenn.Code Ann. § 26–2–106 (1980), to seventy-five (75%) percent, or $794.78 per month.

This is a core proceeding. 28 U.S.C.A. § 157(b)(2)(A) (West Supp.1988).

## I

A copy of the Plan and all facts essential to a resolution of the issues before the court have been stipulated by the debtor and trustee. The "Stipulations Of Facts And Documents" filed November 3, 1988, as amended December 2, 1988, recite in material part: [3]

1. The debtor, L.H. Stansberry, Sr., filed a petition for relief under Chapter 7, Title 11, United States Code, on April 14, 1988 [sic].[4]

2. The debtor's birthdate is February 22, 1923.

3. By amendment to his Schedule B–4 filed on October 25, 1988, the debtor claimed the "Benefits and Assets of Retirement Pension" at "Boilermaker–Blacksmith National Pension Trust, 522 Brotherhood Building, Kansas City, Kansas 66101–2766" as exempt under T.C.A. § 26–2–111 and 29 U.S.C. § 1056 to the "Maximum" extent.

4. The trustee filed an objection to the debtor's amended claim of exemption on October 28, 1988.

5. The above referenced pension plan is an ERISA qualified plan.

. . . .

7. The debtor's regular monthly benefit under the plan is $1,144.49.

8. The debtor's disposable or net monthly benefit under the plan is $1,050.70.

. . . .

10. The debtor worked in employment covered by the plan from 1940 to 1982 when he became disabled and began receiving a separate disability pension not involved in this matter.

The Plan, described in a ninety-five page booklet, provides participants with four potential types of pensions. These pensions, discussed at Article III of the Plan, together with a summary of eligibility requirements for each, are as follows:

### Age Pension

Participant must be 65 years of age or older and have at least 1,000 hours of covered employment.

### Early Retirement Pension

Participant must be between 55 and 65 years of age and have at least fifteen years of pension credit. Participant must also have at least 1,000 hours of work in covered employment.

### Disability Pension

Participant must become totally disabled and be awarded a Social Security or Railroad Retirement Disability Benefit before age 65. Participant must also have at least 1,000 hours of work in covered employment.

### Vested Pension

A participant has a right to a Vested Pension if he has credit for at least ten years of vesting service. A Vested Pension is payable upon retirement: (a) after the Participant has attained normal retirement age (65), or (b) after the Participant has attained age 55 if he has fulfilled the service requirements for an Early Retirement Pension.

---

3. Paragraphs 6 and 9 of these stipulations incorporate copies of the Plan and a pension check evidencing the debtor's monthly benefits into the record. Neither of these paragraphs nor the documents they reference will be duplicated.

4. The debtor's petition was filed March 1, 1988.

The Plan is funded exclusively by contributions from the employer. In the event of death prior to meeting the eligibility requirements for an Early Retirement Pension, Age Pension, or Vested Pension, the contributions credited to an employee's account, up to a maximum of $6,000, is paid to the deceased's designated beneficiary. Monthly benefits paid from any of the four types of pensions discussed above are for the lifetime of the pensioner with a guarantee of sixty monthly payments. In the event of the pensioner's death before receiving sixty monthly benefit payments, the balance of the guaranteed payments are paid to the pensioner's beneficiary. The Plan provides options making it possible for a participant to assure that a spouse or other beneficiary continues to receive benefits in the event the participant dies first. One of these options is designated as the "Husband–And–Wife Pension"; another is the "120 Certain Payments Option." The Plan contains no provision for a participant's encroachment upon the Plan assets by way of a loan or otherwise.

While the court has discussed in general terms the types of pensions provided for under the Plan, it is appropriate to set forth the following material provisions of the Plan:

### ARTICLE I

### Definitions

. . . .

Section 19. The term "Normal Retirement Age" means age 65 or, if later, the age of the Participant on the tenth anniversary of the participation.

### ARTICLE VII

Claim Procedures, Determination of Disputes, Benefit Payments, and Retirement

. . . .

Section 5. Benefit Payments Generally.

(a) A Participant who is eligible to receive benefits under this Plan and makes application in accordance with the rules of this Pension Plan shall be entitled upon retirement to receive the monthly benefits provided for the remainder of his life, subject to the provisions of this Plan....

. . . .

Section 7. Lump Sum Payment in Lieu of Monthly Pension. If, at the time a monthly pension is payable to a Participant, the actuarial value of the lifetime pension is $1,750 or less, the Trustees, at their discretion, may pay to the Participant the lump sum amount of such actuarial value, in lieu of the monthly pension otherwise due him....

. . . .

Section 13. Non–Assignment of Benefits. No Participant, Pensioner or Beneficiary entitled to any benefits under this Pension Plan shall have the right to assign, alienate, transfer, encumber, pledge, mortgage, hypothecate, anticipate, or impair in any manner his legal or beneficiary interest, or any interest in assets of the Pension Trust, or benefits of this Pension Plan. Neither the Pension Trust nor any of the assets thereof, shall be liable for the debts of any Participant, Pensioner or Beneficiary entitled to any benefits under this Plan, nor be subject to attachment or execution or process in any court or action or proceeding. Notwithstanding the foregoing, benefits shall be paid in accordance with the applicable requirements of any "qualified domestic relations order" as defined by Section 206(d)(3) of ERISA.[5]

Section 14. No Right to Assets. No person other than the Trustees of the Pension Trust shall have any right, title or interest in any of the income, or property of any funds received or held by or for the account of the Pension Trust, and

---

**5.** This anti-alienation and anti-assignment provision is essential in order for the Plan to meet the requirements of ERISA § 206(d)(1), 29 U.S.C.A. § 1056(d)(1) (West Supp.1988) (*See* n. 9, *infra*), and for the Plan to qualify for tax-exempt status under the Internal Revenue Code, 26 U.S.C.A. § 401(a)(13) (West Supp.1988).

no person shall have any vested right to benefits provided by the Pension Plan except as expressly provided herein.

### ARTICLE VIII

#### Miscellaneous

Section 1. Administration. This Plan shall be administered by the Board of Trustees, who may delegate this responsibility to an Administrator retained or employed pursuant to Section 1(a) of Article III of the Trust Agreement. The Board may adopt such rules and regulations consistent with the provisions of the Trust Agreement and Plan as may be necessary or desirable for such administration. The Board, or the Administrator on its behalf, shall have the power to determine the eligibility for, and the amount of benefits payable to each applicant for benefits, and to pay or cause to be paid benefits from the Fund to eligible applicants. Any such determination by the Board, or Administrator on its behalf, shall be final and binding on all persons unless appealed to the Board as provided by Section 4 of Article VII. The decision of the Board on such appeal shall be final and binding on all persons.

. . . .

Section 3. Limitation on Vesting. Except as specifically provided in Article III, no Employee prior to retirement in accordance with this Plan shall have any vested rights to benefits under this Plan.

## II

The commencement of a bankruptcy case under Title 11 of the United States Code creates an estate comprised of "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C.A. § 541(a)(1) (West 1979 & Supp. 1988). The Congressional intent that the bankruptcy estate be all encompassing is clearly evidenced by the legislative history to § 541(a):

**6.** Bankruptcy Code § 522 provides in material part:

The scope of the paragraph is broad. It includes all kinds of property, including tangible or intangible property, causes of action ... and all other forms of property currently specified in section 70(a) of the Bankruptcy Act....

S.Rep. No. 989, 95th Cong., 2d Sess. 82, H.R.Rep. No. 595, 95th Cong., 1st Sess. 367 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5787, 5868, 6323.

The Bankruptcy Code further provides that "an interest of the debtor in property becomes property of the estate ... notwithstanding any provision ... (A) that restricts or conditions transfer of such interest by the debtor[.]" 11 U.S.C.A. § 541(c)(1)(A) (West Supp.1988). However, the general rule of § 541(c)(1)(A) is qualified by § 541(c)(2) which provides the following exception: "A restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law is enforceable in a case under this title." 11 U.S. C.A. § 541(c)(2) (West Supp.1988).

This court, following the Eighth Circuit in *Samore v. Graham (In re Graham)*, 726 F.2d 1268 (8th Cir.1984), has previously determined that § 541(c)(2) is not preempted by ERISA and that an ERISA qualified pension plan is protected if it meets the state law requirements qualifying it as a valid spendthrift trust. *In re Faulkner*, 79 B.R. 362 (Bankr.E.D.Tenn.1987) and *In re Ridenour*, 45 B.R. 72 (Bankr.E.D.Tenn. 1984); *see also*, *In re Elsea*, 47 B.R. 142 (Bankr.E.D.Tenn.1985); *Lichstrahl v. Bankers Trust (In re Lichstrahl)*, 750 F.2d 1488 (11th Cir.1985) (" 'Applicable nonbankruptcy law' refers only to state spendthrift trust law"); *Goff v. Taylor (Matter of Goff)*, 706 F.2d 574 (5th Cir.1983); *In re Witte*, 92 B.R. 218 (Bankr.W.D.Mich.1988). However, a determination that a debtor's interest in an ERISA qualified pension plan is not excluded from the estate by § 541(c)(2) is not totally dispositive of the issue: the debtor's interest in a pension plan and/or its benefits may still be all or partially exempt under applicable state exemption statutes.[6]

(b) Notwithstanding section 541 of this title, an individual debtor may exempt from property

The trustee ignores the fundamental issue—whether the debtor's monthly benefit payments are derived from a trust recognized under Tennessee law as a spendthrift trust. The trustee focuses exclusively on the debtor's ability to exempt the "Benefits and Assets" of the Plan from the estate. His argument presupposes that the debtor's interest in the Plan and his resulting monthly benefit payments are not excluded from the estate under § 541(c)(2).

The trustee contends that under the authority of the recent Supreme Court decision in *Mackey v. Lanier Collections Agency & Service, Inc.*, 486 U.S. 825, 108 S.Ct. 2182, 100 L.Ed.2d 836 (1988), ERISA preempts Tennessee exemption statutes which bear on pension benefit plans and that the debtor's claim of an exemption under Tennessee law is, therefore, invalid.[7]

In *Mackey* the Supreme Court held: (1) that a Georgia statute that singled out ERISA employee welfare benefit plans for protective treatment under state garnishment procedures was preempted by ERISA § 514(a);[8] (2) that pursuant to ERISA § 206(d)(1)[9] ERISA forbids garnishment of employee pension benefit plans; and (3) that ERISA is not intended to forbid garnishment of welfare benefit plans even where the purpose thereof is to collect judgments against plan participants.

In *In re Faulkner*, this court noted:

> [T]he ERISA provisions do not preempt federal law defining the § 541(c)(2) exclusion in terms of spendthrift trusts as

---

of the estate the property listed in either paragraph (1) or, in the alternative, paragraph (2) of this subsection.... Such property is—
> (1) property that is specified under subsection (d) of this section, unless the State law that is applicable to the debtor under paragraph (2)(A) of this subsection specifically does not so authorize; or, in the alternative,
> (2)(A) any property that is exempt under Federal law, other than subsection (d) of this section, or State or local law that is applicable on the date of the filing of the petition at the place in which the debtor's domicile has been located for the 180 days immediately preceding the date of the filing of the petition, or for a longer portion of such 180–day period than in any other place; and
> (B) any interest in property in which the debtor had, immediately before the commencement of the case, an interest as a tenant by the entirety or joint tenant to the extent that such interest as a tenant by the entirety or joint tenant is exempt from process under applicable nonbankruptcy law.

11 U.S.C.A. § 522 (West 1979 & Supp.1988).

Tennessee opted out of the federal scheme of exemptions specified in § 522(d) in 1980. Tenn.Code Ann. § 26–2–112 (1980).

**7.** At the time the debtor filed his bankruptcy petition on March 1, 1988, the law in Tennessee relating to the exemption of pension plans was governed exclusively by Tenn.Code Ann. § 26–2–111(1)(D) (1980), which provides:

> [T]he following shall be exempt from execution, seizure or attachment in the hands or possession of any person who is a bona fide citizen permanently residing in Tennessee:
> ....
> (D) To the same extent that earnings are exempt pursuant to § 26–2–106, a payment under a stock bonus, pension, profit sharing, annuity, or similar plan or contract on ac-

count of death, age or length of service, unless:
> (i) Such plan or contract was established by or under the auspices of an insider that employed the debtor at the time that the debtor's rights under such plan or contract arose;
> (ii) Such payment is on account of age or length of service; and
> (iii) Such plan or contract does not qualify under Section 401(a), 403(a), 403(b), 408 or 409 of the Internal Revenue Code of 1954 (26 U.S.C. 401(a), 403(a), 403(b), 408 or 409).

> Provided, however, that the assets of the fund or plan from which any such payments are made, or are to be made, are exempt only to the extent that the debtor has no right or option to receive them except as monthly or other periodic payments beginning at or after age fifty-eight (58). Assets of such funds or plans are not exempt if the debtor may, at his option, accelerate payment so as to receive payment in a lump sum or in periodic payments over a period of sixty (60) months or less.

Tenn.Code Ann. § 26–2–111(1)(D) (1980).

**8.** Section 514(a), codified at 29 U.S.C.A. § 1144(a) (West 1985), provides:

> (a) Supersedure; effective date
> Except as provided in subsection (b) of this section, the provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title. This section shall take effect on January 1, 1975.

**9.** Section 206(d)(1), codified at 29 U.S.C.A. § 1056(d)(1) (West Supp.1988), provides:

> (d) Assignment or alienation of plan benefits
> (1) Each pension plan shall provide that benefits provided under the plan may not be assigned or alienated.

defined and recognized under traditional state law....[10]

> This court ... concludes that Congress intended to exclude from the debtor's estate under § 541(c)(2) only those ERISA-qualified pension plans which also constitute valid spendthrift trusts under relevant state law.

*In re Faulkner*, 79 B.R. at 365, quoting from *In re Ridenour*, 45 B.R. at 78. This court's review of *Mackey* does not lead to the conclusion that its decisions in *Ridenour* and *Faulkner* have been overruled. *Mackey* does not address ERISA within the context of § 541(c)(2).

The threshold issue for determination is whether the Plan qualifies under Tennessee law as a spendthrift trust. Chief Bankruptcy Judge Ralph Kelley, speaking for this court out of its Southern Division, addressed the issue of ERISA qualified pension plans under Tennessee law in *In re Elsea, supra*. Judge Kelley, synopsizing the Tennessee law on spendthrift trusts, notes:

> [I]n a true spendthrift trust protection flows from an express restriction on transfer. G. Bogert. The Law of Trusts and Trustees § 221 (2d ed. rev. 1979).
>
> Tennessee law allows true spendthrift trusts only under a statute. Tenn.Code Ann. § 26–4–101.[11] Besides the statute's express requirements, the courts have added the requirement that the trust must be an "active" rather than a "dry" trust, which basically means that the property must be under the control of the trustee rather than the debtor-beneficiary. *Jourolmon v. Massengill*, 86 Tenn. 81, 5 S.W. 719 (1887); *First Na-*

*tional Bank v. Nashville Trust Co.*, 62 S.W. 392 (Tenn.Ch.App.1901).

> The courts have also said that the beneficiary must be limited to a right to receive income. *Howard v. United States*, 566 S.W.2d 521 (Tenn.1978), citing *Robertson v. Brown*, 13 Tenn.App. 211 (1931) (dictum). Surely the statute allows a donor to put money in trust to be paid out to the beneficiary. G. Bogert, The Law of Trusts and Trustees § 222 at 392–393 (2d ed. rev. 1979). The beneficiary in such a case has only a right to periodic payments, which is in a sense only a right to income. The beneficiary does not have control of the trust property. The trust is not necessarily a dry trust. It is not clear that the courts meant that the beneficiary must be limited to a right to the income earned by the trust principal.

*In re Elsea*, 47 B.R. at 148–49.

The Tennessee spendthrift trust statute is, however, limited to trusts established by recorded will or registered deed. *Baskin v. Commerce Union Bank*, 715 S.W.2d 350 (Tenn.Ct.App.M.S.1986); *In re Elsea*, 47 B.R. at 149. The pension plan in question thus does not technically qualify as a spendthrift trust under Tennessee law. However, this court has determined that the Plan is not subject to the claims of the debtor's creditors even though the trust was not established by recorded will or registered deed. As is noted by Judge Kelley:

> The requirement that the trust be created by recorded will or registered deed is in effect a requirement of public notice of the limits on the rights of the benefi-

---

**10.** ERISA provisions, while preempting state law, do not preempt other federal law. ERISA § 514(d), codified at 29 U.S.C.A. § 1144(d) (West 1985), provides:

(d) Alteration, amendment, modification, invalidation, impairment, or supersedure of any law of United States prohibited

Nothing in this subchapter shall be construed to alter, amend, modify, invalidate, impair, or supersede any law of the United States (except as provided in sections 1031 and 1137(b) of this title) [inapplicable herein] or any rule or regulation issued under any such law.

**11.** This statute provides in material part:

(a) The creditor whose execution has been returned unsatisfied, in whole or in part, may file a bill in the chancery court against the defendant in the execution, and any other person or corporation, to compel the discovery of any property, including stocks, choses in action, or money due to such defendant, or held in trust for him, except when the trust has been created by, or the property so held has proceeded from some person other than the defendant himself, and the trust is declared by will duly recorded or deed duly registered.

Tenn.Code Ann. § 26–4–101 (1980).

ciaries and his creditors.... Is there a reasonably well-informed creditor anywhere who does not know of ERISA and its limitations on creditors' rights in the trust property?

*In re Elsea,* 47 B.R. at 149 (citation omitted); *see also State v. Nashville Trust Co.,* 199 S.W.2d 785, 790 (Tenn.Ct.App.M.S. 1945) ("Such a record [by will or deed duly recorded], being notice to the public, prevents the beneficiary from misleading creditors, or obtaining false credit upon his apparent ownership of the trust property").

As did Judge Kelley in *Elsea,* this court concludes that the Tennessee courts would treat the Plan as a spendthrift trust. In reaching this conclusion, the court relies upon several factors. First, the Plan is not a self-settled trust created by the debtor: it is funded exclusively by contributions from the debtor's employer. *In re Ridenour,* 45 B.R. at 78–79, *citing McArthur v. Faw,* 183 Tenn. 504, 193 S.W.2d 763 (1946) and *Rose v. Third Nat'l Bank,* 27 Tenn.App. 553, 183 S.W.2d 1, 7 (1944); Bogert, *The Law of Trusts and Trustees,* § 223, pp. 438–39 (2nd ed. revised 1979). The debtor has no right to withdraw funds from the trust other than by meeting the eligibility requirements of one of the four benefit plans enumerated in the Plan. *Robertson v. Brown,* 13 Tenn.App. 211 (1931); *see also Baskin,* 715 S.W.2d at 352. Furthermore, the debtor has no control over the corpus of the trust. *Robertson,* 13 Tenn. App. at 225–26; *Baskin,* 715 S.W.2d at 352. Finally, the Plan contains the requisite anti-alienation and anti-assignment provisions.

### III

The court has concluded that the Plan at issue qualifies as a spendthrift trust under Tennessee law and is thus excluded from the debtor's estate pursuant to 11 U.S.C.A.

§ 541(c)(2). Accordingly, the court need not consider whether the debtor's interest in the Plan, including the monthly benefit payments realized therefrom, are exempt. As the estate has no interest in the Plan or in the debtor's future monthly benefit payments, the trustee can assert no interest in these assets.

The debtor's claim of an exemption in his interest in the Plan and monthly benefit payments is superfluous.[12] In view of the court's findings, it will not consider the impact of the Supreme Court's decision in *Mackey* on the debtor's claim to an exemption of his interest in the Plan under Tenn. Code Ann. § 26-2-111(1)(D) (1980). At this juncture, any such ruling would amount to nothing more than dictum. An order providing that the debtor's interest in the Plan and monthly benefit payments do not constitute assets of the estate will enter.

This Memorandum constitutes findings of fact and conclusions of law as required by Fed.R.Bankr.P. 7052.

---

12. This does not suggest that this debtor or any other debtor should not fully disclose in his or her statement of affairs and schedules the existence of a stock bonus, profit sharing, pension or similar plan together with any benefit payments attributable to that plan. Such a disclosure appears to be required by 11 U.S.C.A. § 521 (West 1979). A failure to disclose might inhibit the ability of the debtor to obtain a discharge.

*See* 11 U.S.C.A. § 727(a)(4)(A) (West 1979). As is true in the case sub judice, it is often the courts who are required to determine whether the debtor's interest in a plan is excluded as property of the estate under § 541(c)(2). *See, e.g., Ridenour, Elsea* and *Faulkner, supra.* Cases in other jurisdictions are equally numerous.