In re James MARTIN and Jill Martin, Debtor.

In re Charles E. LANGFORD, Debtor.

Bankruptcy Nos. 90–4050–9P7, 90–2306–8P7.

United States Bankruptcy Court, M.D. Florida, Tampa Division.

Sept. 7, 1990.

Bill Berke, Cape Coral, Fla., for James and Jill Martin, debtors.

Alan L. Levine, Naples, Fla., Trustee.

Diane Barrs, Tampa, Fla., for Charles Langford, debtor.

Gordon L. Kiester, Tampa, Fla., Trustee.

## ORDER ON OBJECTIONS TO CLAIMS OF EXEMPTIONS

ALEXANDER L. PASKAY, Chief Judge.

THESE are Chapter 7 liquidation cases, and the matters under consideration are Objections filed by the Trustee in each case to the Debtors' claims that funds held in their respective ERISA qualified 401–K retirement plans are not property of the estate or, alternatively, are exempt from administration of the bankruptcy estate pursuant to *Fla. Stat.* § 222.21(2)(a) and 11 U.S.C. § 522(b)(2)(A). The Court has considered the Objections, together with the Debtors' responses and argument of counsel, and now finds and concludes as follows:

James and Jill Martin (Martins) filed their Chapter 7 voluntary Petition for Relief on April 30, 1990, Case No. 90–4050. On their B–4 Schedule, the Martins claimed Jill Martin's interest in a 401–K retirement plan with J. Byrons/Amcena Corporation as exempt pursuant to *Fla. Stat.* § 222.21(2)(a). The Debtors value Mrs. Martin's interest in the plan at $9,000.00. The Debtors now claim that the plan qualifies as a spendthrift trust, thus, Mrs. Martin's interest in the plan is not property of the estate.

In the case of Charles E. Langford, Case No. 90–2306, the Debtor filed his Chapter 7 voluntary Petition for Relief on March 15, 1990. On his B–4 Schedule of Exemptions, the Debtor claimed his interest in a 401–K retirement plan with Unijax as exempt pursuant to *Fla. Stat.* § 222.21(2)(a). The Debtor also claims that the plan is a spendthrift trust and not property of the estate. The Debtor valued his interest in the plan at $5,000.00.

Both the Unijax and J. Bryons retirement plans provide employees with an opportunity to set aside and accumulate savings over a long period of time. Both companies make matching contributions which vary according to the amount that each employee contributes to the plan. Under both plans, the participating employee is eligible to receive the plan benefits either upon retirement, death, disability, or upon reaching the age of 59½. Under both plans, if the employee quits or is fired, the employee is entitled to the value of his vested interest in the plan. Both plans permit the employee to withdraw money from the plans in the event of hardship. The J. Bryons plan permits employees to withdraw at any time "all or any portion of . . . [the] After–Tax Contributions Account"; however, employees may not withdraw employer matching contributions unless one of the conditions listed above exists. The J. Bryons plan also permits employees to borrow against the plan in the event of financial hardship.

The Trustees for the respective estates subsequently objected to the Debtors claiming the funds in their ERISA plans as exempt, contending that the funds currently held on behalf of the Debtors in the plans mentioned above are, in fact, property of the estate and subject to administration, notwithstanding *Fla. Stat.* § 222.21(2)(a), and cannot be claimed as exempt.

In opposition, the Debtors contend first that the funds in the plans are not property of the estate as the plans constitute spendthrift trusts excluded from the scope of § 541 of the Bankruptcy Code by virtue of § 541(c)(2). Second, the Debtors claim that despite cases in which this Court already considered the same issues, i.e., *In re Gardner,* 118 B.R. 860 (Bankr.M.D.Fla. 1990); *In re Bryant* and *In re Partsch,* 106 B.R. 727 (Bankr.M.D.Fla.1989); and *In re Sheppard* and *In re Polombo,* 106 B.R. 724 (Bankr.M.D.Fla.1989), the Trustees' Objections should be overruled and the Debtors' claims of the ERISA qualified plans as exempt should be allowed based on *Fla.Stat.* § 222.21(2)(a) and 11 U.S.C. § 522(b)(2)(A).

The threshold question in resolving these matters is whether or not the Debtors' interests in the plans are even property of the estate under 11 U.S.C. § 541. 11 U.S.C. § 541 provides:

> ... except as provided in subsection (b) and (c)(2) of this section, all legal and equitable interests of the debtor in property as of the commencement of the case are properties of the estate.

§ 541(c)(2) provides that

> a restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law is enforceable in a case under this title.

Because all ERISA plans contain anti-alienation provisions required by the Internal Revenue Code in order to make contributions to an ERISA plan tax exempt, it is argued that the anti-alienation provision required by ERISA constitutes "applicable nonbankruptcy law" and thus, the Debtors' interests in the plans are not property of the estate. This argument was recently upheld by the Fourth Circuit Court of Appeals in the case of *Anderson v. Raine* (*In re Moore*), 907 F.2d 1476 (4th Cir.1990). In this case the Fourth Circuit held that ERISA's mandatory anti-alienation provision made ERISA an "applicable nonbankruptcy law" and, therefore, the interests of debtors in ERISA-qualified profit-sharing and pension plans are excluded from property of the estate. *See also In re Burns,* 108 B.R. 308 (Bankr.W.D.Okla.1989); *In re Komet,* 104 B.R. 799 (Bankr.W.D.Tex. 1989).

■ Notwithstanding the foregoing, the law is clear in this Circuit that "applicable nonbankruptcy law" refers only to state spendthrift trust law. *In re Lichstrahl,* 750 F.2d 1488 (11th Cir.1985). *See also In re Daniel,* 771 F.2d 1352 (9th Cir.1985), *cert. denied,* 475 U.S. 1016, 106 S.Ct. 1199, 89 L.Ed.2d 313 (1986); *In re Graham,* 726 F.2d 1268 (8th Cir.1984); *In re Goff,* 706 F.2d 574 (5th Cir.1983).

Thus, it is necessary to consider whether the plans under consideration constitute spendthrift trusts under Florida law. Generally, courts have not classified interests in ERISA plans as spendthrift trusts because the debtor usually has the ability to reach and manipulate his interests in the plan, even if to do so would terminate the debtor's employment and interest in the plan. Further, courts have considered the fact that the employee may generally borrow against the plan and may withdraw his contributions to the plan under certain circumstances. *See In re Goshe,* 85 B.R. 157 (Bankr.M.D.Fla.1988) [profit-sharing plan containing boilerplate anti-alienation language, but giving beneficiary right to receive early distribution and accelerated payment upon written demand not spendthrift trust]; *In re Mumm,* 52 B.R. 140 (Bankr.S.D.Fla.1985) [profit-sharing plan not spendthrift trust where debtor could require plan trustee to convey to debtor his interest in plan after termination of em-

ployment]; *In re Nichols*, 42 B.R. 772 (Bankr.M.D.Fla.1984) [profit-sharing plan not spendthrift trust where debtor had right to receive vested interest in plan and had ability to borrow from plan.]. *But see In re Zabelski*, 81 B.R. 89 (Bankr.N.D.Fla. 1988) [ERISA ESOP is spendthrift trust where debtor's only option to terminate plan was a termination of employment.]; *see also In re Lawson*, 67 B.R. 94 (Bankr. M.D.Fla.1986); *In re Forbes*, 65 B.R. 58 (Bankr.S.D.Fla.1986).

■ Under Florida law, the purpose of spendthrift trusts is to provide a fund for the maintenance of the beneficiary while at the same time protecting the beneficiary not only from himself, but also from his creditors. *Croom v. Ocala Plumbing & Electric Co.*, 62 Fla. 460, 57 So. 243 (1911). The typical spendthrift trust bars the voluntary or involuntary alienation of the beneficiary's interest in his right to receive the trust income. *Waterbury v. Munn*, 159 Fla. 754, 32 So.2d 603 (1947). As the cases cited above reflect, where the beneficiary has the ability to terminate the trust or to require the trust administrator to convey trust property to him or her, the beneficiary has dominion and control over the trust res sufficient to defeat the validity of the spendthrift trust.

■ Thus, in the last analysis the ultimate question is whether the Debtors' ability to reach their interests in the plans rises to the level of asserting a sufficient degree of dominion and control over their funds in the plans, thus to negate the spendthrift character of these plans. Under her plan, Mrs. Martin may borrow against the funds in the plan in the event of financial hardship (which may include the acquisition of a residence or the education of dependents), upon approval of the plan administrator, and she may make "hardship" withdrawals. This feature of the plan is certainly inconsistent with any recognized characteristics of a classical spendthrift trust. Based on the foregoing, this Court is satisfied that under the applicable principles of the law of Florida, the J. Bryons/Amcena Corporation 401–K retirement plan is not a spendthrift trust, thus, the funds in her account are property of her estate. The same applies to the Unijax plan, as Mr. Langford may reach his interests in the plan not only upon death or retirement, but in the event of hardship.

■ It is urged by the Debtors that even assuming their interests in the plans are property of the estate, they are exempt pursuant to *Fla.Stat.* § 222.21(2)(a). This Section enacted by the Florida Legislature in 1987 provides as follows:

(2)(a) Except as provided in paragraph (b), any money or other assets payable to a participant or beneficiary from, or any interest of any participant or beneficiary in a retirement or profit-sharing plan that is qualified under s. 401(a), s. 403(a), s. 403(b), s. 408, or s. 409 of the Internal Revenue Code of 1986, as amended, is exempt from all claims of creditors of the beneficiary or participant.

The availability of this exemption provided by the Statute to Florida residents has been considered by this Court in cases such as *In re Gardner, supra; In re Bryant* and *In re Partsch, supra,* 106 B.R. at 727; and *In re Sheppard and Polombo, supra,* 106 B.R. at 724, where this Court held that based on the decision of the Supreme Court in *Mackey v. Lanier Collections Agency & Service, Inc.,* 486 U.S. 825, 108 S.Ct. 2182, 100 L.Ed.2d 836 (1988), § 514(a) of ERISA [29 U.S.C. § 1144(a)] preempts *Fla.Stat.* § 222.21(2)(a) and thus, the exemption provided by this Statute is not available to Debtors, and *Fla.Stat.* § 222.21(2)(a) is void. In *Mackey*, the Supreme Court held that a Georgia statute which purported to immunize funds in a 401–K plan from garnishment asserted by a creditor was invalid by virtue of the doctrine of federal preemption, based on § 514(a) of ERISA [29 U.S.C. § 1144(a)] which provides:

Except as provided in subsection (b) of this section, the provisions of this subchapter and subchapter IV of this chapter *shall supersede any and all state laws insofar as they may now or hereafter relate to any employee benefit plan* as described in section 1003(a) of this title and not exempt under section 1003(b) of this title. (emphasis added).

It follows that because *Fla.Stat.* § 222.21(2)(a) "relates to" ERISA and specifically incorporates its provisions by reference, the statute is therefore preempted and the Debtors may not exempt the funds in question under this statute.

■ To escape the inescapable conclusion that the funds in the ERISA plans may not be claimed and allowed as exempt pursuant to *Fla.Stat.* § 222.21(2)(a), the Debtors also rely on 11 U.S.C. § 522(b) which permits a debtor to choose either the federal exemptions listed in 11 U.S.C. § 522(d) or those provided by state law *and* also "any property that is exempt under Federal law, other than subsection (d) of this section ..." § 522(b)(2)(A). Thus, the Debtors contend that because of the anti-alienation provisions required by the Internal Revenue Code of ERISA plans, ERISA itself created a specific non-bankruptcy federal exemption within the meaning of § 522(b)(2)(A).

Under the prevailing authority in this Circuit, this argument must also fail. As stated by the Eleventh Circuit Court of Appeals in *In re Lichstrahl,* 750 F.2d 1488 (11th Cir.1985),

> The House and Senate reports on § 522(b)(2)(A) provide a list of property that can be exempted under federal laws. ERISA-qualified pension plans are not included. Although Congress may not have intended the list to be exhaustive, the failure to include ERISA is nonetheless indicative of congressional intent. Congress knew of the much-debated and comprehensive statute when it issued the House and Senate reports on § 522(b)(2)(A) in 1977 and 1978, and yet it did not include ERISA in those reports. *Matter of Goff,* 706 F.2d at 585; *see also In re Graham,* 726 F.2d 1268, 1274 (8th Cir.1984). Congress, however, did refer to ERISA in other sections of the Bankruptcy Code. Of particular importance is ERISA's inclusion within the alternative federal exemptions listed in § 522(d). The failure to mention ERISA in connection with § 522(b) was intentional. *Matter of Goff,* 706 F.2d at 585.

*Id.* at 1491.

The court in *Lichstrahl* went on to note that the list of property exempted ·under federal law, which includes Social Security payments, wages of fishermen, Railroad Retirement Act benefits, Foreign Service Retirement and Disability payments, among others, can be distinguished from ERISA benefits. ERISA was designed by Congress to regulate only private employer pension plans, while the list of exemptions referred to in the legislative history of § 522(b)(2)(A) are all "peculiarly federal in nature, created by federal law or related to industries traditionally protected by the federal government." *Id.* at 1491, quoting *In re Graham, supra,* 726 F.2d at 1274. Based on the foregoing, the Eleventh Circuit Court of Appeals concluded that § 522(b)(2)(A) did not provide a non-bankruptcy federal exemption. *See also In re Daniel,* 771 F.2d 1352 (9th Cir.1985), *cert. denied* 475 U.S. 1016, 106 S.Ct. 1199, 89 L.Ed.2d 313 (1986); *In re Graham, supra,* 726 F.2d at 1268; *In re Goff, supra,* 706 F.2d 574 (5th Cir.1983). *But see contra In re Messing,* 114 B.R. 541 (Bankr.E.D.Tenn. 1990).

Despite these cases, the Debtors contend that ERISA is, in fact, a separate federal exemption for purposes of 11 U.S.C. § 522(b)(2)(A), relying on *Guidry v. Sheet Metal Workers Pension Fund,* —— U.S. ——, 110 S.Ct. 680, 107 L.Ed.2d 782 (1990). *Guidry,* decided in a nonbankruptcy context, addressed the appropriateness of imposing a constructive trust on a pension fund. The Supreme Court determined that it is inappropriate to "approve any generalized equitable exceptions—either for employee malfeasance or for criminal misconduct—to ERISA's prohibition on the assignment or alienation of pension benefits", *Id.,* at ——, 110 S.Ct. at 687, 107 L.Ed.2d at 795, and thus found the constructive trust was improper. It should be noted that *Guidry* in no way stands for the proposition that ERISA creates a separate federal exemption for purposes of 11 U.S.C. § 522(b)(2)(A). Therefore, the Debtors' reliance on this case is misplaced. In the matters before this Court, the Trustees are not seeking to reach the plans by invoking equitable exceptions to ERISA's anti-alienation provisions. They are merely object-

ing to these Debtors' attempts to claim the funds held by them in their respective ERISA plans as exempt, by relying on specific federal legislation set forth in the Bankruptcy Code.

Based on the weight of authority this Court is satisfied that ERISA does not qualify as a separate federal exemption for purposes of § 522(b)(2)(A) and, therefore, this Court finds the Debtors' final argument not well taken.

Upon consideration of the foregoing, this Court is satisfied that the Trustees' Objections should be sustained and the Debtors' claims of the ERISA plans as exempt should be disallowed.

Accordingly, it is

ORDERED, ADJUDGED AND DECREED that the Trustees' Objections to the Debtors' claims of their interests in ERISA plans as exempt be, and the same are hereby, sustained. It is further

ORDERED, ADJUDGED AND DECREED that the Debtors' claims of their interests in their respective ERISA plans as exempt property be, and the same are hereby, disallowed, and the Trustees shall proceed to administer the funds in the ERISA plans for the benefit of the estates.

DONE AND ORDERED.