In re Donald J. ORKIN, Debtor.

Bankruptcy No. 94–10851.

United States Bankruptcy Court,
D. Massachusetts,
Eastern Division.

Aug. 1, 1994.

Peter Nils Baylor, Nutter, McClennen & Fish, Boston, MA, for debtor.

Jefferey J. Cymrot, Law Offices of Michael B. Feinman, Andover, MA, for trustee.

## DECISION ON TRUSTEE'S OBJECTION TO DEBTOR'S CLAIM OF EXEMPTION

WILLIAM C. HILLMAN, Bankruptcy Judge.

Donald J. Orkin ("debtor") was the sole proprietor of a real estate business. On June 22, 1992, he established the Donald J. Orkin Retirement Plan (the "Plan"). In the same month he transferred $271,000 into the Plan, representing the proceeds of an individual retirement account ("IRA"). Under the terms of the Plan, debtor was the employer, sole employee, and sole participant.

Debtor filed a voluntary petition under Chapter 7 of the Code on February 24, 1994. His schedules indicate that the Plan had a value of $295,000 on the petition date. On Schedule C of his petition debtor chose the "federal" exemptions and declared as exempt the entire amount of the Plan pursuant to 11 U.S.C. 541(c)(2).

The Chapter 7 trustee filed an objection to debtor's claim of exemption pursuant to Fed. R.Bankr.P. 4003(b). Specifically, the trustee objects to the exemption because, he asserts, § 541(c)(2) is inapplicable to a claim of ex-

emption. Notwithstanding any applicability to debtor's exemptions, the trustee also argues that § 541(c)(2) does not operate to exclude the Plan from the estate in this case. Debtor argues that the Plan is excluded from the estate pursuant to § 541(c)(2), or in the alternative that the Plan is exempt under either the state or federal exemptions available to him.

The debtor reserved all rights under Fed. R.Bankr.P. 1009(a) to amend his schedules, including Schedule C to claim the "state" exemptions available by operation of 11 U.S.C. § 522(b)(2) or the "federal" exemptions available under § 522(d)(10)(E).

Pursuant to Fed.R.Bankr.P. 4003(c), the trustee has the burden of proving that any exemption is not properly claimed.

### Discussion

Section 541(a) of the Bankruptcy Code includes in a debtor's bankruptcy estate "all legal and equitable interests of the debtor in property as of the commencement of the case," 11 U.S.C. § 541(a), but certain property interests of the debtor are specifically excluded from the estate. The basis of one exclusion is § 541(c)(2) which states:

A restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under *applicable nonbankruptcy* law is enforceable in a case under this title.

11 U.S.C. § 541(c)(2) (emphasis added).

The effect of the provision is to exclude from the estate property subject to restrictions on alienation, such as a debtor's beneficial interest under a valid spendthrift trust. *See In re Herzig*, 167 B.R. 707 (Bankr.E.D.Mass.1994).

With regard to the trustee's first argument, I agree that § 541(c)(2) is not directly applicable to a claim of exemption under § 522. Section 541(c)(2) operates to exclude certain property from the estate, and a debtor has no need to exempt property which is not part of the estate.[1]

---

**1.** The Court is aware that it is common practice for debtors to reference § 541 on Schedule C to    provide explanation.

### Applicability of § 541(c)(2)

■ The trustee next argues that the Plan's assets are property of the estate and not eligible for the § 541(c)(2) exclusion because the Plan does not contain a transfer restriction enforceable under either state or federal nonbankruptcy law.

Section 541(c)(2) validates restrictions upon transfer of a debtor's beneficial interest in a trust that are enforceable under "applicable nonbankruptcy law" by excluding property from the estate. Until 1992 the Circuit Courts of Appeal were divided over whether "applicable nonbankruptcy law" referred only to state spendthrift trust law or included federal law as well. See Velis v. Kardanis, 949 F.2d 78, 82 (3d Cir.1991). The question was important with respect to retirement trusts because federal regulations under the Employee Retirement Income Security Act of 1974 ("ERISA"), which regulate the vast amount of retirement plans, require the presence of a clause restricting transferability of retirement benefits. 29 U.S.C. § 1056(d)(1). Thus, the presence of these anti-alienation clauses would seem to qualify most retirement plans for § 541(c)(2) exclusion if federal law was included within the term "applicable nonbankruptcy law."

In 1992, the Supreme Court decided Patterson v. Shumate, holding that "applicable nonbankruptcy law" under § 541(c)(2) includes both state spendthrift law and federal law including ERISA. —— U.S. ——, ——, 112 S.Ct. 2242, 2246, 119 L.Ed.2d 519 (1992). The result of Patterson is that employee retirement benefits under ERISA-qualified pension plans are excluded from a debtor's bankruptcy estate. In light of this, the Court must next determine whether debtor's Plan is "ERISA qualified."

### ERISA

In 1974, Congress enacted ERISA to regulate the operations of employee benefit plans.

The statute imposes various reporting, vesting, funding, and insurance requirements on employers. See 29 U.S.C. §§ 1021–1309. To encourage compliance with ERISA, Title II of the statute is composed almost entirely of amendments to the Internal Revenue Code ("IRC"), providing tax benefits to both employers and employees. See 29 U.S.C. §§ 1201–1242. See also In re Conroy, 110 B.R. 492, 495 (Bankr.D.Mont.1990). To comply with ERISA[2] and qualify for tax benefits, a pension plan must, among other things, include a restriction prohibiting assignment and alienation of pension benefits.[3]

The term "ERISA-qualified" articulated in Patterson is not defined in the Bankruptcy Code, the Internal Revenue Code, in ERISA itself, or in Patterson. Arguably the Patterson Court left an ambiguity as to whether the term "ERISA-qualified" is meant to designate: (1) plans which are subject to ERISA; (2) plans which are subject to I.R.C. § 401(a)[4]; (3) plans which contain enforceable anti-alienation clauses; or (4) plans that have combinations of any of these three features. In re Hall, 151 B.R. 412, 418 (Bankr. W.D.Mich.1993) (quoting Christy & Skeldon, Shumate and Pension Benefits in Bankruptcy, 2 J.Bankr.L. & Prac. 719, 725 (1992)) (hereinafter "Christy & Skeldon").

Some courts have held that "ERISA qualified" means that a plan satisfies both ERISA and the IRC. However, this approach has been criticized because creditors could reach plan benefits if an employer fails to amend a plan to comply with a change in the tax law. In re Hall, 151 B.R. at 418, n. 17 (quoting Christy & Skeldon at 725). Notwithstanding this possibility, the Hall court held that a plan is "qualified" when it is satisfies both the IRC and ERISA. Id. at 419. See also In re Sirois, 144 B.R. 12, 14 (Bankr.D.Mass.1992) (holding that a plan is "qualified" if it complies with ERISA and the IRC); In re Witwer, ("ERISA qualified plans are created

---

**2.** ERISA provides: "Each pension plan shall provide that benefits provided under the plan may not be assigned or alienated." 29 U.S.C. § 1056(d)(1).

**3.** The IRC provides: "A trust shall not constitute a qualified trust under this section unless the plan of which such trust is a part provides that benefits provided under the plan may not be assigned or alienated." 26 U.S.C. § 401(a)(13)(A) (passim).

**4.** I.R.C. § 401(a) contains thirty-one requirements that a plan must comply with in order to be a "tax qualified" plan.

pursuant to 29 U.S.C. § 1001 et seq. of the Labor Code and 26 U.S.C. § 401(a) of the Internal Revenue Code, and must include a restriction on alienation") 148 B.R. 930, 934 (Bankr.C.D.Cal.1992), *aff'd,* 163 B.R. 614 (9th Cir. BAP 1994). *But see In re Hanes,* in which the court did not consider "tax qualification" as in *Hall, Sirois,* and *Witwer,* stating: "[W]e conclude for purposes of § 541(c)(2), a plan is 'qualified' under ERISA if it is (1) governed by ERISA and (2) includes a non-alienation provision that is (3) enforceable under ERISA." 162 B.R. 733, 740 (Bankr.E.D.Va.1994). *See also In re Kaplan,* 162 B.R. 684, 691 (Bankr.E.D.Pa. 1993) (holding that it is not necessary to ascertain whether a plan is "tax qualified" but only that it is *covered* by ERISA).

■ I find the best view to be that a plan is "ERISA qualified" only when it complies with the requirements of both ERISA and the IRC. I believe that the third requirement which other courts impose, that a plan must also have an enforceable non-alienation provision, is unnecessary as that is already a prerequisite to ERISA compliance. *See* 29 U.S.C. § 1056(d)(1). This is consistent with the controlling First Circuit authority discussed below.

■ The trustee asserts two challenges to debtor's claim that his Plan is ERISA qualified. First, he contends that the debtor as employer, sole employee, and sole participant under the Plan cannot be an "employee" as that term is used in ERISA. Alternatively, he argues that the Plan's anti-alienation clause is unenforceable under IRC § 401(a)(13).

The controlling law in this circuit is found in *Kwatcher v. Mass. Service Emp. Pension Plan,* 879 F.2d 957 (1st Cir.1989), in which the court held specifically that a person functioning as the employer cannot be a covered employee under ERISA. "Since Kwatcher is an 'employer' under 29 U.S.C. § 1002(5), pension payments to him would 'become of advantage to [an] employer,' thereby violating the law." [5] 879 F.2d at 960 (citing *Amato v. Western Union Int'l, Inc.,* 773 F.2d 1402, 1414 (2d Cir.1985), cert. dismissed, 474 U.S. 1113, 106 S.Ct. 1167, 89 L.Ed.2d 288 (1986)). In addition, the court stated that by its terms 29 C.F.R. § 2510.3–3(c)(1) "unambiguously debars a sole shareholder ... from 'employee' status, notwithstanding that he may work for the corporation he owns, shoulder to shoulder with eligible (non-owner) employees.[6] No amount of mental gymnastics can avoid the plain meaning of the regulation ..." *Id.* at 961.

I find that debtor's interest under the Plan is not ERISA qualified. In light of this, the transfer restriction contained in § 12.4 of debtor's Plan is not a restriction enforceable under federal law which will serve to exclude the assets of the Plan from debtor's estate. I need not reach the issue of whether the Plan complies with § 401(a) of the IRC.

## State Law Issues

■ A debtor can exclude a pension plan from the estate if he or she can demonstrate

---

**5.** An elementary requirement of ERISA is that "the assets of a plan shall never inure to the benefit of any employer and shall be held for the *exclusive* purposes of providing benefits to participants in the plan...." 29 U.S.C. § 1103(c)(1) (emphasis added). Section § 1002 of ERISA defines the following terms as: (i) An "employer" is "any person acting directly as an employer, or indirectly in the interest of an employer, in relation to an employee benefit plan ..."; (ii) An "employee" is "any individual employed by an employer"; and (iii) A "participant" is "any employee or former employee of any employer ... who is or may become eligible to receive a benefit of any type from an employee benefit plan...." 29 U.S.C. §§ 1002(5)–(7).

**6.** The Department of Labor ("DOL"), which is authorized to promulgate regulations necessary to implement the provisions of ERISA pursuant to 29 U.S.C. § 1135, has narrowed the definition of "employee benefit plan."

> (a) General. This section clarifies the definition ... of the term "employee benefit plan"....
>
> (b) Plans without employees. For purposes of title I of the Act and this chapter, the term "employee benefit plan" shall not include any plan ... under which no employees are participants covered under the plan....
>
> (c) Employees. For purposes of this section: (1) an individual and his or her spouse shall *not* be deemed to be employees with respect to a trade or business, whether incorporated or unincorporated, which is *wholly owned* by the individual or by the individual and his or her spouse.

29 C.F.R. § 2510.3–3 (emphasis added).

a restriction on transfer enforceable under applicable *state* law. *Patterson,* —— U.S. at ——, 112 S.Ct. at 2246. Debtor has specifically reserved his right to amend his schedules to claim the state exemptions. The following discussion will be helpful if he should do so.

Debtor is the "trustee" of his Plan as that term is defined in § 1.85 of the Plan. Section 15.3 of the Plan entitled "Termination" states:

> Employers shall have the right to terminate their Plans upon 60 days notice in writing to the Trustee. If the Plan is terminated, partially terminated, or if there is a complete discontinuance of contributions under a profit sharing plan maintained by the Employer, all amounts credited to the accounts of the Participants shall vest and become nonforfeitable. In the event of termination, the Employer shall direct the Trustee with respect to the distribution of accounts to or for the exclusive benefit of Participants or their beneficiaries ...

The terms of the Plan allow the trustee (in this case debtor as his own employer) to terminate the Plan on sixty (60) days notice with the funds reverting to him as beneficiary.

I had occasion to discuss the vitality of spendthrift trusts for purposes of § 541(c)(2) in *In re Herzig, supra.* I noted there that "[t]he conclusion of many courts was that where the debtor has the power to amend or terminate the trust, the debtor has such absolute authority over the trust that it must be included as property of the estate." *Id.* 167 B.R. at 710.

Although debtor's Plan does contain a restriction on transfer, the Plan is still easily terminable by him on 60 days notice, with all funds reverting to him. Under those circumstances I find that the Plan does not contain a restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under Massachusetts spendthrift trust law and, hence, the Plan's assets cannot be excluded if state law exemptions were claimed.

Debtor may amend his Schedule C within thirty (30) days from the date of this decision. The trustee shall file any objection which he may have within twenty (20) days thereafter. Absent an amendment, an order will enter sustaining the trustee's objection to the claimed exemption.